UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MATTHEW WALEYKO,
    Plaintiff,

v.

CARLOS DEL TORO, SECRETARY
OF THE NAVY,
    Defendant.

C.A. No. 23-215-JJM-LDA

## ORDER

Plaintiff Matthew Waleyko, employed as a scientist at the Naval Undersea Warfare Center Division in Newport, Rhode Island, sued Defendant Carlos Del Toro, Secretary of the Navy ("the Navy"), for a single claim of sex-based employment discrimination under 42 U.S.C. § 2000e-16 ("Title VII") after he was forced to resign from the Navy. The Navy filed a Motion to Dismiss, arguing that Mr. Waleyko's allegations fail to state a claim because he did not allege disparate treatment or discriminatory animus. ECF No. 11. Because the Court finds that Mr. Waleyko's claim fails under the Federal Rules of Civil Procedure Rule 12(b)(6), it GRANTS the Navy's motion and DISMISSES his Amended Complaint. *Id.*

### I. BACKGROUND

Essentially, Mr. Waleyko paints a picture that his work environment at the Naval Undersea Warfare Center Division was anti-male. Mr. Waleyko worked on Project Harbinger and alleges that many men left that project because it was "not conducive to men." ECF No. 9 ¶ 50. Just shy of completing his two-year probationary

period, he was given a choice of being terminated or resigning after the Navy determined, after several complaints about his behavior toward female colleagues, that he acted unprofessionally. That decision was made based on the following events alleged in the Amended Complaint.

Ms. Sravanthi Bodana, Mr. Waleyko's supervisor, informed him that a co-worker reported that he engaged in unprofessional behavior toward her. Specifically, Ms. Beibhinn Gallagher[1] reported that he sounded condescending, *id.* ¶ 23, that she felt sexually harassed by him, *id.* ¶¶ 26-31, and that she described his behaviors as "stalkerish" and akin to those of an active shooter.[2] *Id.* ¶¶ 33, 38. Mr. Waleyko acknowledges that Ms. Bodana told him that both he and Ms. Bodana were being investigated due to Ms. Gallagher's allegations, *id.* ¶ 34, but also alleges that "[t]he government did not investigate the allegations against the Plaintiff but rather accepted the false accusations against him as true, namely that he had engaged in sexual misconduct or sexual harassment of Ms. Gallagher and used this as part of the basis to terminate him." *Id.* ¶ 35. He alleges that Ms. Gallagher was biased against him because she had "issues" with men and "publicly blamed all of the issues that she had in the workplace on gender-based discrimination."[3] *Id.* ¶¶ 42-43.

---

[1] The precise date is unclear from the Amended Complaint, but it appears that Ms. Gallagher resigned her position around the time she reported Mr. Waleyko to his supervisor.

[2] Mr. Waleyko alleges that he did not know the nature of the complaints against him at the same time that he alleges that his supervisor told him of the conduct that his co-worker reported. *Id.* ¶¶ 25-31.

[3] Mr. Waleyko also alleges that Ms. Gallagher was abusive toward him but he did not complain to anyone. *Id.* ¶ 45.

Mr. Waleyko raises two other incidents which he alleges also led to his termination. He alleges that he was unfairly investigated as a potential "insider threat" because he cried in his supervisor's office while going through a difficult phase in his life. *Id.* ¶ 47. He alleges that this behavior would not have drawn an investigation if he were female. *Id.* ¶ 49. And Ms. Layna Nelson, the Project Lead for Project Harbinger, accused Mr. Waleyko of deleting code. He was investigated and it was found that the code was not deleted.[4] *Id.* ¶¶ 52-55, 57.

During the course of these incidents, Mr. Waleyko alleges that his supervisor did not use similar language when discussing conduct with female employees. *Id.* ¶ 24. He alleges that these types of allegations "were always made by women against men." *Id.* ¶ 32. He also alleges that if he was female, a proper investigation of alleged sexual harassment would have been done where he could have given a statement or provided evidence on his behalf. *Id.* ¶¶ 36-37, 41. He alleges that the Navy believed Ms. Gallagher's reports because he was being accused of stereotypical male behavior. *Id.* ¶ 40. He alleges that no female would have been investigated and deemed an insider threat for crying at work. *Id.* ¶ 49. Ms. Nelson was not disciplined or terminated for making false statements when the code she accused Mr. Waleyko of

---

[4] He also alleges that he was never asked where the code was, and female employees would have simply been asked. *Id.* ¶¶ 55-56. But then he alleges that he was questioned "about the files allegedly missing which had already been found." *Id.* ¶ 58.

deleting was found where a male employee surely would have been disciplined or terminated for doing so.[5] *Id.* ¶ 65.

The Navy remained concerned that Mr. Waleyko was an insider threat based on Ms. Nelson's statement about the code deletion, Ms. Gallagher's report of alleged sexual harassment, his alleged stalkerish behavior, and her assessment of him as an "active shooter". *Id.* ¶ 61. The Navy gave Mr. Waleyko the option to resign or be terminated and he elected to resign. *Id.* ¶ 71. Mr. Waleyko alleges that his termination was pretextual and the reasons provided on the notice of termination were a pretense for gender discrimination because the Navy knew they were false. Post-termination, he availed himself of Equal Employment Opportunity counseling, filed a complaint resulting in a formal investigation, where the Navy concluded in a final agency decision that it did not discriminate against him based on his sex.

Mr. Waleyko filed his initial complaint in this Court, which he subsequently amended. ECF No. 9. The Navy moves to dismiss, arguing that the Amended Complaint fails to state a claim for disparate treatment gender discrimination because Mr. Waleyko did not allege plausible discriminatory animus. ECF No. 11.

## II.   STANDARD OF REVIEW

When the Court reviews a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it accepts all Plaintiff's factual allegations as true

---

[5] He also alleges that he was never asked where the code was, and female employees would have simply been asked. *Id.* ¶¶ 55-56. But then he alleges that he was questioned "about the files allegedly missing which had already been found." *Id.* ¶ 58.

4

to decide whether they "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may not consider "conclusory legal allegations." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citing *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Additionally, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citations omitted).

## III. DISCUSSION

Title VII makes it unlawful for employers "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C.A. § 2000e–2(a)(1). A disparate treatment claimant, like Mr. Waleyko, bears the burden of proving he was "subjected to different treatment than persons similarly situated in all relevant aspects." *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir. 1995) (citing *Smith v. Stratus Comput., Inc.*, 40 F.3d 11, 17 (1st Cir. 1994)). Complaint allegations must be more than "merely conclusory regarding the characterization of the defendant's motives," and must contain facts that give "rise to an inference of discriminatory animus." *Johnson v. Gen. Elec.*, 840 F.2d 132, 138 (1st Cir. 1988). At the pleadings stage, a plaintiff must "outline specific facts, which if proven would entitle him to relief." *Christensen v. Lawrence F. Quigley Mem'l Hosp.*, 656 F. Supp. 14, 16 (D. Mass. 1985).

The primary basis for Mr. Waleyko's Title VII claim is that, when accused of sexual harassment, being an insider threat, and deleting code, he was allegedly treated less favorably than the women with whom he worked would have been treated. He alleges that Ms. Gallagher's complaints against him were based on discriminatory animus because she had a history of bad workplace experiences with men. His claim rests on circumstantial evidence, and so the Court will apply the *McDonnell Douglas v. Green* burden-shifting analysis. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

Under *McDonnell Douglas v. Green*, a plaintiff must first establish a prima facie case, which gives rise to an inference of discrimination.[6] 411 U.S. 792 (1973); *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). To prove a prima facie disparate treatment claim, Mr. Waleyko must plausibly allege that: (1) he is a member of a protected class, (2) he possessed the necessary qualifications and adequately performed his job, (3) he suffered an adverse employment action, and (4) similarly situated members outside his protected class were treated more favorably. *Johnson v. Univ. of Puerto Rico*, 714 F.3d 48, 53-54 (1st Cir. 2013). The Court finds that Mr. Waleyko has adequately alleged that he is male, that he was qualified to do

---

[6] Once a prima facie case is properly alleged, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its decision. In turn, the plaintiff then must show that the employer's stated reason is a pretext for discrimination. *Kosereis*, 331 F.3d at 212. *McDonnell Douglas* is typically analyzed at the summary judgment stage, when the Court looks at the evidence supporting these elements looking for issues of disputed material facts typically developed through discovery. On a motion to dismiss, the Court looks to the complaint's allegations to ensure that they are not conclusory and allege facts that give "rise to an inference of discriminatory animus." *Johnson v. Gen. Elec.*, 840 F.2d at 138.

his job, and that his forced resignation was an adverse employment action. Where Mr. Waleyko struggles is in plausibly alleging comparative evidence, i.e., that he was treated less favorably than similarly situated peers.[7]

Generally, the fourth element of the prima facie case requires "some evidence of a causal connection between [] membership in a protected class and the adverse employment action." *Bhatti v. Tr. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011). Essentially, Mr. Waleyko must plausibly allege that he was forced to resign because he is a man and that similarly situated women would not have lost their jobs for the same conduct. Mr. Waleyko alleges that:

- Ms. Bodana counseled him to not sound condescending after Ms. Gallagher complained to her about his behavior; she did not use similar language with female employees. ECF No. 9 ¶¶ 23-24.

- Ms. Bodana asked him if he had forced Ms. Gallagher to carpool with him during a work trip which he denied, told him that Ms. Gallagher felt his actions were "stalkerish," and described him as an "active shooter"; female employees

---

[7] The place to evaluate comparators is typically in the third step of the *McDonnell Douglas* analysis, not the first. *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 n.4 (1st Cir. 2012) ("'the time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual, when the need arises to test the pretextuality vel non of the employer's articulated reason for having acted adversely to the plaintiff's interests,' as opposed to as part of a plaintiff's prima facie case") (quoting *Kosereis*, 331 F.3d at 213), *accord Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999). The Court will, however, consider Mr. Waleyko's allegations as to similarly situated female employees in order to evaluate the fourth element of the prima facie case to ensure that he can plausibly raise an inference of discrimination.

7

were never accused of similar behavior or described as stalkers or active shooters. *Id.* ¶¶ 28-33, 38.

- The Navy said it would investigate Ms. Gallagher's allegations against Mr. Waleyko and Ms. Bodana, but he alleges that it did not investigate because he was never interviewed, proving that the Navy accepted her account as true. *Id.* ¶¶ 34-35, 37, 41. He alleges that the Navy would have investigated if he was a woman. *Id.* ¶ 36.

- Ms. Gallagher's reports about his unprofessional behavior were rooted in discriminatory animus because she acknowledged that she blamed all of her problems in the workplace on men. *Id.* ¶¶ 42-43.

- He was pegged as emotionally unstable and investigated as a potential insider threat because he cried in his supervisor's office while going through a difficult phase in his life. *Id.* ¶¶ 47-48. He would never have been subjected to such an investigation if he were a woman. *Id.* ¶ 49.

- Project Lead Layna Nelson falsely accused him of stealing code. *Id.* ¶¶ 51-53. Even though the code was found, the Navy investigated Mr. Waleyko. *Id.* ¶¶ 57-58. He alleges that a female employee would have simply been asked where the code was and would never have been investigated. *Id.* ¶¶ 54-55, 59.

- Department Head Christopher DelMastro stated to Ms. Bodana that Ms. Nelson's statement about the code deletion and allegations that Mr. Waleyko was an insider threat and Ms. Gallagher's report of alleged sexual harassment that was based on his allegedly pressuring her to carpool two

times, his alleged stalkerish behavior, and her opinion that he reminded her of an "active shooter" were the basis for his decision to terminate Mr. Waleyko. *Id.* ¶ 61. Active shooters, code stealers, and government leakers are overwhelmingly male. *Id.* ¶ 64. He alleges that no female would have been terminated based on these allegations alone. *Id.* ¶ 62.

- Ms. Nelson was never disciplined for making a false report against him and is still employed at the Navy. *Id.* ¶ 66. A man in a similar situation would have been disciplined or terminated. *Id.* ¶ 65.

### 1. Comparators

The comparators that Mr. Waleyko discusses in his Amended Complaint must be similarly situated in order to help him make his prima facie case. The comparators appear to be Ms. Bodana, his supervisor, and Ms. Nelson, a Project Lead. These named individuals are not similarly situated because Mr. Waleyko was not a supervisor or Project Lead. *See Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas*, 982 F.3d 20, 29 (1st Cir. 2020) (distinctions as to an employee's position is a proper factor in determining that a plaintiff and a proposed comparator are not similarly situated). And while the title alone is not totally determinative, *Ripoli v. Dep't of Hum. Servs., Off. of Veterans Affs.*, C.A. No. 1:17-CV-225-JJM-LDA, 2023 WL 7920473, at *7 (D.R.I. Nov. 16, 2023), Mr. Waleyko has not alleged that when invoking discrimination he suffered as compared to hypothetical favorable treatment Ms. Nelson and Ms. Gallagher would have received and thus is not comparing apples to apples. *Diaz v. City of Somerville*, 59 F.4th 24, 32 (1st Cir. 2023).

9

He also raises the specter of other unnamed female Navy employees as comparators who he alleges *would be* treated more favorably than he was just because of their gender. His allegations about the unnamed female employees are nonspecific, speculative, and too broad to plausibly claim discrimination based on disparate treatment.

As for other potential scenarios where similarly situated females could be comparators, Mr. Waleyko alleges that Ms. Gallagher was abusive with him and she was never investigated, but he never complained so cannot allege that his complaints against her were treated differently than her complaints against him. He also does not allege that similar allegations of sexual harassment, deleting code, or stalking were ever made against similarly situated female Navy employees against which he could compare their treatment with his, which ultimately dooms his disparate treatment claim. Without more, his conclusory allegations based on hypotheticals of similarly situated comparators does not state a claim.

### 2. Forced to Resign Because of His Gender

Mr. Waleyko argues that the facts in his Amended Complaint establish a causal connection between his forced resignation and his membership in a protected class. *Ortiz v. Fed. Bureau of Prisons*, 290 F. Supp. 3d 96, 105 (D. Mass. 2017). He alleges that Ms. Gallagher targeted him with baseless sexual harassment accusations because she had a self-professed discriminatory bias and animus against men. He does not similarly allege that Ms. Nelson, who raised the concern about the missing code, had a similar animus toward him because of his gender. He alleges that the

labels put upon him–condescending, active shooter, code stealer, stalker, and insider threat–are stereotypically reserved for men and were not used to describe any female employee. ECF No. 9 ¶ 64. Mr. Waleyko notes that the Navy would have done a better more thorough job of investigating Ms. Gallagher's claims if he were not a man. He also alleges that more men than women have been terminated from the Command where Mr. Waleyko was employed; in one year, of the twelve terminations, eleven were male and one was female, evidence he alleges that men were targeted for discriminatory action based on gender. *Id.* ¶ 66.

Mr. Waleyko broadly alleges that he was discriminated against because the Navy adhered to societal stereotypes about men, but he does not allege a connection between those stereotypes and any statements or conduct. The Navy investigated the sexual harassment and code deleting allegations against him, but Mr. Waleyko fails to allege that the Navy violated any internal policy governing these investigations–in other words, he does not allege that the Navy did not follow its typical method of investigation in his case because he is male or that the Navy broke a promise of procedural protections to him as an employee in order to raise an inference of bias. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34-35 (2d Cir. 2019).[8] The

---

[8] Mr. Waleyko relies heavily on the Second Circuit Court of Appeals' decision in *Menaker* that held that a male coach stated a claim for Title VII sex discrimination when he was fired for allegedly sexually harassing a female student. In that case, the student, a tennis player, filed a false claim against her coach after he denied her demand for a scholarship that she says the previous coach promised her. The holding of that case turned on the allegation that there was a "clearly irregular investigative or adjudicative process" in Mr. Menaker's case that did not follow Hofstra's usual process. *Menaker*, 935 F.3d 20 at 34. In this case, Mr. Waleyko does not allege any specific instances of the Navy engaging in an irregular investigative process other

mere fact that the Navy looked into Ms. Gallagher and Ms. Nelson's complaints, whether they ultimately were well-founded or not, is not enough to get over the plausibility hump of a gender discrimination claim. And, as far as the termination percentage of men versus women in the Command, Mr. Waleyko does not allege how many Command employees were female, so the Court is left to speculate whether more men than women were terminated during the one-year period of time he highlights.

Mr. Waleyko "cannot state a valid disparate treatment claim based on neutral events []he perceives to be discriminatory[.]" *Ortiz*, 290 F. Supp. 3d at 105. After reviewing the Amended Complaint, the Court concludes that Mr. Waleyko has failed to specifically describe instances of disparate treatment based on his gender and thus fails to state a claim under Rule 12(b)(6). The Court therefore DISMISSES Mr. Waleyko's Title VII claim.

## IV.  CONCLUSION

The Court GRANTS the Navy's Motion to Dismiss. ECF No. 11.

---

than conclusory statements that complaints against female employees would have been properly investigated or that he would not have been investigated if he were female.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

February 28, 2024